Jambs D. Hopkins, J.
Three applications arising out of an arbitration clause appearing in a collective bargaining agreement between the parties have been submitted to the court. Dalero Corp., the employer (hereinafter called “ Balero ”), has moved (1) to stay arbitration, and (2) to vacate the arbitrator’s award; the officers of affiliated unions, International Ladies’ Garment Workers’ Union, AFL-CIO, and Snow Suit, Skiwear, Leggings and Infants’ Novelty Wear Workers’ Union, Local 105, International Ladies’ Garment Workers’ Union, AFL-CIO (hereinafter called “Union”, move (3) to confirm the arbitrator’s award. Essentially the issues raised by all *458 three applications are the same. The material facts, though somewhat intricate, are largely not controverted.
In October, 1959, Dalcro became a member of the Infants’ and Children Novelties Association (hereafter called “Association ”), a group of employers. At the same time, Dalcro adopted in writing a collective bargaining agreement between the Association and the Union. That agreement recognized the Union as the bargaining representative of employees of the members of the Association. That agreement contained article “Forty-Fifth”, providing for the arbitration of disputes “ involving questions of interpretation or application of any clause of this agreement, or any acts, conduct or relations between the parties or their respective members, directly or indirectly ”. That article further provided that the arbitration procedure should be the exclusive means for the determination of all disputes, complaints or grievances specified therein. The parties to the agreement designated George J. Mintzer to act as a permanent umpire in any dispute to be determined by arbitration. The agreement by its terms expires on May 31, 1961.
Between June and October, 1960, a dispute arose between Dalcro and the Union concerning an alleged oral modification of the agreement, whereby it was claimed that Dalcro promised to increase the wages of its employees by 5% in lieu of paying the wage rates stipulated in the agreement. On October 6, 1960, the Union submitted to Mr. Mintzer a complaint that Dalcro had not increased the wages as promised, and a notice was thereafter sent to Dalcro on October 7, 1960 for a hearing under the arbitration procedure for October 19, 1960. On that date, a representative of Dalcro appeared and asked for an adjournment. The request was granted and an adjournment given until October 25, 1960.
On October 25, 1960, Dalcro was represented by its attorney, who stated to the arbitrator that he appeared specially and asked for an adjournment in order to investigate the facts and properly advise his client. The Union’s representative opposed the request, unless Dalcro would permit its books and records to be inspected by the Union. Dalcro’s attorney did not agree to the condition, and the arbitrator then granted a one-day adjournment until October 26, 1960. In the meantime, and some time during October 25, 1960, one of the employees of Dalcro filed an unfair labor practice charge against both Dalcro and Union with the National Labor Relations Board. That charge alleged an unfair labor practice under sections 7 and 8 of the National Labor Relations Act (U. S. Code, tit. 29, §§ 157, 158), dealing with claimed coercive acts with respect to the exercise of employees’ rights in joining or not joining a labor organization.
*459 On October 26, 1960, the parties conferred in an endeavor to compose the dispute, and notified the arbitrator of the conference. During the conference, the application by Dalcro for a stay of arbitration was served on the Union, and shortly thereafter was served on the arbitrator. That application was grounded on the claims that (1) there was no valid arbitration agreement, since the Union did not represent a majority of Dalcro’s employees, nor was the collective bargaining agent of its employees; (2) there was no arbitrable issue; and (3) jurisdiction of the issues and the proceedings had been pre-empted to the National Labor Relations Board. The conference between the parties came to naught; the Union stated that it intended to proceed with arbitration despite the service of the application for a stay, and on the same day the arbitration proceeded without the presence of Dalcro, resulting in an award directing Dalcro to pay the 5% increase in wages. Soon thereafter, Dalcro moved to vacate the award on the grounds that the arbitrator was partial to the Union, was guilty of misconduct in refusing to adjourn the hearing and to stay the proceedings, and had exceeded his powers. The Union then cross-moved to confirm the award.
The issues which fairly flow from the applications are: (1) the right of Dalcro to a stay of the arbitration; (2) the validity of the collective bargaining agreement containing the arbitration article; (3) the jurisdiction of the arbitrator to proceed in the face of the filing of an unfair labor practice charge with the National Labor Relations Board; and (4) the right of Dalcro to an adjournment of the arbitration under all circumstances.
I
Dalcro argues that its application for a stay should now be granted, irrespective of the award, citing subdivision 2 of section 1458 of the Civil Practice Act. That section permits an application for a stay of arbitration on the issue, among others, of the making of the contract to arbitrate. The section provides, however, that the validity of the contract may be raised only if certain requisites are observed — that the applicant has not participated in the selection of arbitrators or in any of the proceedings, and has not been served with an application to compel arbitration. The latter we disregard, since it is conceded that no application to compel arbitration was served. We disregard equally the third requisite that the application for a stay must be served within 10 days of the notice of intention to arbitrate (and here it is clear that it was not), for the notice *460 served by the Union for arbitration did not contain the information which is commanded by subdivision 2 of section 1458 (cf. Matter of Hesslein & Co. v. Greenfield, 281 N. Y. 26; Schafran & Finkel v. Lowenstein & Sons, 280 N. Y. 164; Matter of Handler [O’Connor], 18 Misc 2d 109). The question remains whether Dalcro waived its rights to a stay and to put the validity of the contract in issue through participation in the selection of the arbitrator or in the proceedings.
It is now well established that the rights to a stay and to test the arbitrability of a dispute are lost by participation either in the selection of the arbitrator or in the proceedings (Matter of National Cash Register Co., 8 N Y 2d 377, 382-383; Matter of Rosenbaum-Grinell v. Schwarts Int. Textiles, 15 Misc 2d 450; Film Classics v. Roach Studios, 68 N. Y. S. 2d 275).
Here the collective bargaining agreement adopted by Dalcro designates the arbitrator. That alone under the statute constitutes participation. Nevertheless, the validity of the whole agreement is attacked by Dalcro, and perhaps it might be said that the designation falls, if the agreement falls. We discuss beyond the force of Dalcro’s contention that the agreement is invalid.
Suffice it to say at this point that we think that Dalcro participated to such an extent in the proceedings as to forfeit its claim to a stay on the grounds presented. It sought and received an adjournment, without reservation, of the first hearing in the proceedings, and thus entered into and recognized the pending arbitration. (Matter of Staklinski [Pyramid Elec. Co.], 6 A D 2d 565, affd. 6 N Y 2d 159; Milton L. Ehrlich, Inc. v. Swiss Constr. Corp., 21 Misc 2d 506, mod. on other grounds 11 A D 2d 644; Matter of Smith [Polar Navegacion Ltda.], 15 Misc 2d 301; Matter of Simplex Mach. Tool Corp. [Swind Mach. Co.], 16 Misc 2d 85.)
Por reasons stated beyond, we hold that Dalcro was not entitled to a stay because of the pending charge filed with the National Labor Relations Board. Hence, Dalcro’s application for a stay is denied.
II
Our determination that Dalcro participated in the proceedings would ordinarily make academic a consideration of the validity of the collective bargaining agreement, either on its applications for a stay, to vacate the award, or to oppose the confirmation of the award (Civ. Prac. Act, § 1458, subd. 2). In view of the disposition to be made of the issues presented, we believe that we should discuss Dalcro’s claim that the arbitration cannot proceed on an invalid arbitration contract.
*461 Preliminarily, we observe that the arbitration article is so broad as to include within its sweep the dimensions of a dispute regarding the modification of the wage rates in the agreement (Matter of Bohlinger [National Cash Register Co.], 305 N. Y. 539; Matter of Beech-Nut Packing Co., 134 N. Y. S. 2d 916). Dalcro’s argument rests on the premise that the agreement is condemned under the National Labor Relations Act, since it does not appear that the Union was ever recognized as the bargaining agent of a majority of Dalcro’s employees.
It is settled law, however, that there is no condition precedent to arbitration under a collective bargaining agreement that the Union seeking arbitration be established as the representative of the majority of the employer’s workers (Matter of Levinsohn Corp. [Cloak, etc., Union], 299 N. Y. 454). A bargaining contract is presumed to be legal until the contrary is shown by proper proceedings before the National Labor Relations Board. Here we think that such reasoning has particular significance, since Dalcro had been in contractual relationship with the Union for nearly two years prior to the inception of the arbitration. In the absence of a binding determination of illegality, accordingly, Dalcro’s claim that the arbitration should not preoeed on the grounds presented cannot be entertained.
Ill
Dalcro questions the jurisdiction of the arbitrator to proceed in the face of the filing of an unfair labor practice charge by one of its employees against both Dalcro and the Union, and asks for a stay of arbitration upon that point. Since the argument of the three applications here considered, the National Labor Relations Board has refused to issue a complaint and thus take jurisdiction of the charge, for the reason that the alleged violations occurred more than six months prior to the filing of the charge, foreclosing action under subdivision (b) of section 10 of the National Labor Relations Act (U. S. Code, tit. 29, § 160, subd. [b]). The claim of pre-emption can have little substance under this posture of events.
On the merits, moreover, we conclude that arbitration may properly proceed (cf. Matter of Klein [Styl-Rite Optics], 8 A D 2d 811; Matter of Duralite Co. [Local 222], 8 A D 2d 716). We agree with the oft-stated rule that an arbitrator should avoid a decision which might affect or conflict with a determination lying within the jurisdiction of the National Labor Relations Board (Matter of Amperex Electronic Corp. [Rugen], 284 App. Div. 808; cf. Matter of Bloomer Bros. Co. [Smith], 20 Misc 2d 345).
*462 In this case, however, the issue relates to the amount of wages due under an alleged promise by the employer, an issue, which by its nature does not fall peculiarly within the province of the National Labor Relations Board. Rather, the issue relates to a matter which arbitration is particularly suited to determine. The arbitration should not fail, accordingly, on the claim presented by Balero.

IV

Palero’s claim that the arbitrator erred in not granting an adjournment is properly raised by its application to vacate the award, and its opposition to the Union’s application to confirm the award (Civ. Prac. Act, § 1462; Matter of National Cash Register Co., 8 N Y 2d 377, supra). Balero’s claim has several facets, but we do not find it necessary to consider all. We think that one of Balero’s contentions of prejudice has merit.
Balero contends that the arbitrator should have heeded the provisions of subdivision 2 of section 1458 which state that “ The arbitration hearing shall be adjourned upon service of such notice of motion pending the determination of the motion ”, referring to a motion for a stay. The statute is express in its command, and the arbitrator could not exercise his discretion contrary to the statute. On this record, both the arbitrator and the Union had been served with the motion prior to the last adjourned hearing. We may infer that from the evidence received in this hearing the arbitrator based the award. Hence, we must draw the necessary conclusion that the award came into being because the arbitrator did not comply with the mandate of the statute.
In effect, the arbitrator prejudged Balero’s application for a stay by proceeding. Though the court has now determined that a stay should not be granted, the arbitrator did not have the power under the statute to substitute his judgment for that of the court. The error lies not in the fact that the arbitrator was not ultimately right in his judgment, but rather in the presumption that he would be right and thence proceeding with arbitration.
A different holding would lead to chaos, for it would inevitably result in the determination of the court on an application for a stay coming after the award or after the reception of evidence at the hearings. The statute was designed in the interests of orderly procedure, so that time and expense might be avoided, and questions properly directed to the court might be decided prior to the development of the hearings. Nor do we think that the court should bar Palero from further participation in the *463 arbitration, because it has held that its prior participation barred its application for a stay.
Dalero could not surrender, under the statute, its right to participate in the hearings, by making its application for a stay, at least in the absence of a finding of bad faith on its part. On this record, it cannot be said that Balero did not believe in the merits of its application, and tongue-in-cheek, sought only delay. Under these circumstances, an application for a stay, though ultimately doomed to failure, should not leave a party to an arbitration in the position of making a Hobson’s choice, when the arbitrator declines to adjourn the proceedings pending the determination of the application. We hold, therefore, that Balero was prejudiced by the arbitrator’s action contrary to his duty under the statute, and the award must be vacated.
It should be noted, in fairness to both sides, that the court has respected the withdrawal by Balero of any charge of fraud against the arbitrator and the attorneys for the Union in the making of the award, and it does not find any fraudulent practices in the proceedings. The error of the arbitrator was made in law and in the exercise of his discretion under the facts of this record.
Upon reviewing the circumstances and the contentions of the parties, the court decides that (1) Balero’s application for a stay should be denied; (2) Balero’s application to vacate the award should be granted, without costs; (3) the Union’s application to confirm the award is denied; and (4) a rehearing under the arbitration proceeding should be directed before the arbitrator (Civ. Prac. Act, § 1462).
Submit order on notice, fixing time and place of the hearing.